```
                    UNITED STATES DISTRICT COURT
                  EASTERN DISTRICT OF PENNSYLVANIA

GEORGE PFEIFER,            .    Case No. 5:22-CV-01117
                           .
            Plaintiff,     .
                           .    Edward N. Cahn U.S. Courthouse &
                           .    Federal Bldg.
       v.                  .    504 W. Hamilton Street
                           .    Allentown, PA 18101
INVACARE CORPORATION,      .
                           .
            Defendant.     .
                           .    October 5, 2022
. . . . . . . . . . . . ..      2:00 p.m.

              TRANSCRIPT OF PRETRIAL CONFERENCE
            BEFORE HONORABLE JOSEPH F. LEESON, JR.
                 UNITED STATES DISTRICT JUDGE

APPEARANCES:

For George Pfeifer:          MICHAEL D. SHAFFER, ESQ.
                             Shaffer & Gaier
                             8 Penn Center
                             1628 JFK Boulevard, Suite 400
                             Philadelphia, PA 19103

For Invacare Corporation:    DANIEL SETH ALTSCHULER, ESQ.
                             Post & Schell
                             4 Penn Center
                             1600 John F. Kennedy Blvd.
                             Philadelphia, PA 19103



Audio Operator:              JUSTIN F. WOOD

Transcriber:                 UBIQUS REPORTING, INC.
                             61 Broadway, Suite 1400
                             New York, NY 10006
                             212-346-6666
                             Email: infousa@ubiqus.com



             Proceedings recorded by electronic sound
       recording, transcript produced by transcription service.
```

```
 1              COURTROOM DEPUTY:  -- All rise.  Oh, yea, oh, yea,
 2  oh, yea.  All manner of persons having anything to do before
 3  the United States District Court for the Eastern District of
 4  Pennsylvania, which has been in continuous session since
 5  November 10th, 1789, and which is here holding, we say let them
 6  come forward and they shall be heard.  God save the United
 7  States and this Honorable Court.  The Court is now in session
 8  in the matter of George Pfeifer versus Invacare Corporation,
 9  Civil Action Number 22-1117.  Please be seated.
10              THE COURT:  Good afternoon, everyone.
11              MR. DANIEL SETH ALTSCHULER:  Good afternoon, Your
12  Honor.
13              MR. MICHAEL D. SHAFFER:  Good afternoon.
14              THE COURT:  Is Mr. Pfeifer here?
15              MR. SHAFFER:  He is not, Your Honor.
16              THE COURT:  Where is he?
17              MR. SHAFFER:  He's in a nursing home.  He's 94 years
18  old.
19              THE COURT:  He's supposed to be here.
20              MR. SHAFFER:  His client is -- this is his daughter
21  and she has a power of attorney.  He's un -- he cannot travel.
22              THE COURT:  Don't care.  My policies require that the
23  Plaintiff be here.
24              MR. SHAFFER:  Okay.  He's not able to travel, and
25  he's not going to testify at the trial, actually.
```

1              THE COURT:  Pardon?

2              MR. SHAFFER:  He's not going to testify at the trial.

3    He's going to testify by deposition.

4              THE COURT:  He can't make it to the Courthouse?

5              MR. SHAFFER:  Correct.

6              THE COURT:  All right.  You may be seated.

7              MR. SHAFFER:  Thank you.

8              THE COURT:  All right.  I've gone over the pretrial

9    submissions of the parties.  I have some questions for each

10   side and then we're going to cover a number of areas today.

11   The first question I had was the medical condition of the

12   Plaintiff.  I think you've already answered that in part.

13             MR. SHAFFER:  I'm sorry, I didn't hear that.

14             THE COURT:  I think you've already answered that

15   question in part.

16             MR. SHAFFER:  Yes, Your Honor.

17             THE COURT:  All right.  His -- his deposition has

18   been taken?

19             MR. SHAFFER:  Yes, Your Honor.

20             THE COURT:  Has it?  Are you going to rely on the

21   discovery deposition or did you do deposition for use of trial?

22             MR. SHAFFER:  I did deposition for use of trial.

23             THE COURT:  All right.  And how long is that?

24             MR. SHAFFER:  Approximately 25 minutes.

25             THE COURT:  One of the questions I have is, in

4

```
 1    looking -- you may be -- by the way, everyone can be seated to

 2    -- for reasons --

 3              MR. SHAFFER:  -- Thank you.

 4              THE COURT:  -- of comfort.  Now, when we're in front

 5    of the Jury, then you can go to the usual standing and all

 6    that.  But…

 7              MR. SHAFFER:  Thank you, Your Honor.

 8              THE COURT:  In reviewing the Defendant's pretrial

 9    memorandum, there seems to be, and I want to find out if this

10    is true or not true, four different versions of how the

11    accident happened given by your client.  Is there anything to

12    that?

13              MR. SHAFFER:  I don't -- I disagree with that, Your

14    Honor.  I believe that he was walking and he testified, as he

15    was walking, the cane collapsed.  I think that testimony is

16    pretty consistent.  He was cross-examined on a medical record.

17    After about two hours of cross-examination by the Defendant, I

18    think he was confused and he testified consistent with my

19    questioning and he testified consistent on redirect.

20              But I believe that his testimony is consistent and

21    consistent with the ambulance report and the medical records in

22    the emergency room as to how the accident happened.  And we

23    have, in fact, a broken cane here as to how the accident

24    happened.  And Mr. and Mrs. Sanita, who came into the home the

25    date of the acc -- the date of the accident, Mrs. Sanita was
```

```
 1    there, retrieved the broken cane, and Mr. Sanita, the son-in-
 2    law, who came and retrieved it two days later and retrieved the
 3    sheered pin.
 4              THE COURT:  And what's the defense view of this
 5    multiple version --
 6              MR. ALTSCHULER:  -- Yes, Your Honor
 7              THE COURT:  -- situation.  Is there anything to it?
 8              MR. ALTSCHULER:  Yes, there is plenty to it.  The
 9    Plaintiff testified inconsistently in his direct video exam.  I
10    took a discovery deposition, also, between the direct
11    examination and my cross-examination off the video record.  So
12    there's versions in there, then there's versions on cross-
13    examination and it's not as simple, respectfully, as Mr.
14    Shaffer would suggest it is.  Rather, the cane did not
15    collapse, and we're going to establish it didn't collapse
16    before he slipped and fell.  So there is a dispute.
17              THE COURT:  All right.  I'd like to take a look at
18    the cane.
19              MR. SHAFFER:  May I approach, Your Honor?
20              THE COURT:  Yeah.
21              MR. SHAFFER:  So I have to kind of take it apart
22    because the --
23              THE COURT:  -- Yeah, that's fine.
24              MR. SHAFFER:  So can the Defendant see it?  Do you
25    want…
```

```
1              THE COURT:  Sure.

2              MR. SHAFFER:  Thank you, Your Honor.  So there's a --

3    I'll give you a chance after he's done with it.  So…

4              MR. ALTSCHULER:  Sure.

5              MR. SHAFFER:  So there's two mechanisms within the

6    cane.  Now, the cane came apart, I don't think (inaudible).  So

7    the cane is in two tubes.  Be careful, because the pins in

8    there.   Two tubes inside, so you get this pin.  It is locked

9    inside.  I've seen this in similar, like a crutch or something.

10   The pin goes inside this like this.  Okay?  This locking

11   mechanism (inaudible).  It's not working.  The locking

12   mechanism is not working.  The Plaintiff was up here.  The

13   Plaintiff would then go to use the cane in this -- in this

14   position.  The cane sheared off, went down and collapsed, and

15   he fell.  It's consistent with what the (inaudible) report

16   says.  The cane collapsed.  And this (inaudible) matches in the

17   (inaudible), the cane collapsed.  And we have a -- let me go

18   back.  There's a pin that is sheared off inside of the cane.

19   There's an (inaudible).

20             THE COURT:  What has -- wait, (inaudible).  Is there

21   (inaudible)?

22             MR. SHAFFER:  Sure, Your Honor.  So the way this

23   works is, it's a double snap button.  It's not just one.

24   You're going to see on this side of the cane, you've got a

25   severely (inaudible) as compared to other (inaudible) down.  On
```

7

```
 1  this side, you can see some wear, as well, but it is a
 2  significant amount on this side.  Through engineering analysis,
 3  it's going to be established that the pin that was on this side
 4  -- it's a double snap button, so it's like a V-shaped pin that
 5  the buttons catch at the end and then they protrude through
 6  these adjustment holes.  Through an engineering analysis, we're
 7  going to establish that this pin had failed sometime before,
 8  significantly (inaudible) in that time before this one
 9  ultimately failed.  And that's why this hole is much more
10  elongated than this hole.  So this condition, the condition of
11  this cane, the significant wear and tear, had existed for a
12  very long time.
13          This cantilever is designed to prevent the outer tube
14  and the inner tube from rotating or movement when you snap the
15  cantilever.  Because it had not been working for a substantial
16  period of time, it did not prevent the inner and the outer tube
17  from rotating.  And as a result, the double snap buttons were
18  getting all of the load every time Mr. Pfeifer used the cane.
19  He was also using the cane in an improper condition, an
20  improper manner.  You can see that this one --
21          THE COURT:  -- All right.  At this point, I just
22  wanted to see the cane --
23          MR. SHAFFER:  -- Sure.
24          THE COURT:  -- and just get a feel for both sides
25  only.
```

8

 1          MR. SHAFFER:  Okay.  No problem.

 2          THE COURT:  Okay.  The medical bills for the

 3  Plaintiff, is there any stipulation on the bills?

 4          MR. ALTSCHULER:  I mean, we filed a motion to

 5  preclude bills that we challenged as being unrelated, because

 6  the Plaintiff had a gallbladder operation while in the

 7  hospital, which extended his stay.  But we would otherwise be

 8  willing to stipulate to the amount that would be related to his

 9  hospital stay.  We are not stipulating to treatment post --

10  when he rehabbed at the assisted living facility.

11          THE COURT:  All right.  So authenticity, fairness,

12  and reasonableness, medical necessity for the hospital bill and

13  do you -- did both sides have a clear understanding as to

14  what's being stipulated to and what's not being stipulated to?

15          MR. SHAFFER:  Well, Your Honor, I'm confident we'll

16  be able to figure out what is being carved out for the gall

17  bladder.  I'm, I'm confident we'll be able to figure that out.

18          THE COURT:  All right.  Because I, I don't want to

19  spend time in front of a Jury --

20          MR. SHAFFER:  -- No.

21          THE COURT:  -- on that subject.

22          MR. SHAFFER:  I think I'm confident we'll be able to

23  figure that out.

24          THE COURT:  All right.  I'll direct that by next

25  Tuesday at 12:00, noon, that you submit a joint report to me on

```
 1   this topic.

 2             MR. SHAFFER:  Yes, Judge.

 3             THE COURT:  How it's been resolved, what's going to

 4   be stipulated to, and what's not going to be stipulated to.  As

 5   far as witnesses, I see the Plaintiff has six witnesses.  Lisa

 6   Sanita, is that you, ma'am?  And how long will Ms. Sanita be on

 7   the witness stand for direct?

 8             MR. SHAFFER:  Her direct, maybe half hour, 45

 9   minutes.

10             THE COURT:  And Mr. Sanita, that would be you, sir?

11             MR. RICHARD J. SANITA:  Yes.

12             THE COURT:  How long do you think Mr. Sanita would be

13   on the stand?

14             MR. SHAFFER:  Half hour.

15             THE COURT:  And you have listed John Belita

16   [phonetic] from the Defendant.  How long do you think you'll be

17   with him on, on direct?

18             MR. SHAFFER:  Maybe 90 minutes, maybe more, maybe two

19   hours.  Maybe -- I have to prove my case with him, so…

20             THE COURT:  And then your engineering expert on

21   direct.

22             MR. SHAFFER:  Hour and-a-half.

23             THE COURT:  And Dr. O'Neil, is he going to be on

24   video?

25             MR. SHAFFER:  I'm taking his videotaped deposition
```

```
 1   for trial Friday.  So I can't imagine that that would be very

 2   long.

 3              THE COURT:  So it sounds like you probably only need

 4   about, aside from openings and jury selection, you're only

 5   going to need about a day, just to your case in chief, not, not

 6   accounting for cross-examination.

 7              MR. SHAFFER:  I would say about a day and-a-half, I

 8   would think, Your Honor.

 9              THE COURT:  All right.

10              MR. SHAFFER:  With the cross-examination.

11              THE COURT:  I note that you've also got various

12   medical records and hospital records as part of your exhibit

13   list.  Is there going to be a stipulation as to authenticity as

14   far as the records?

15              MR. ALTSCHULER:  Yes, I'll stipulate the

16   authenticity.

17              MR. SHAFFER:  Yes, Judge.

18              THE COURT:  All right.  All right, that's all the

19   questions I have for the Plaintiff.  Does the Defense have any

20   questions for the Plaintiff based on the Plaintiff's pretrial

21   memorandum?

22              MR. ALTSCHULER:  No, the only thing that I've asked

23   from Mr. Shaffer is that he let me know the order of his

24   witnesses, particularly for Mr. Belita, because he will be

25   flying in from out of town, so I can make sure he's available.
```

1          THE COURT:  All right.  I'm sure your --

2          MR. SHAFFER:  -- I will, of course, do that, Your

3  Honor.

4          THE COURT:  All right.  Let's turn to the Defendant's

5  pretrial memorandum.  I note that on Page 2 of the Defendant's

6  pretrial memorandum, there's an assertion that Mr. Beatty,

7  [phonetic], the Plaintiff's liability expert, admitted that he

8  cannot state, to a reasonable degree of certainty, that the

9  quad cane was manufactured by the Defendant.  Is that true?

10          MR. SHAFFER:  I think it was based upon the

11  discovery, and you already struck that in motion in limine.

12          THE COURT:  Okay.  Are you denying that it's -- oh,

13  yeah, a cane manufactured by your company, or are you admitting

14  it's your product?

15          MR. ALTSCHULER:  We are not admitting it's our

16  product, Your Honor.

17          THE COURT:  How are you going to prove that?

18          MR. SHAFFER:  Through discovery.  And it's the same

19  product, it's got the same measurements, it's got the same

20  model number, it's got the same sku number.  It's the same

21  drawings.  The drawings are exactly the same, the same

22  measurements.  It's got a model number, a sku number.  It's the

23  exact same -- it's got the exact -- it's the -- the drawings

24  match the exact cane.

25          THE COURT:  Are there any other companies with

1  identical designs?

2          MR. SHAFFER:  Not for this model number, not that I'm

3  aware of.

4          THE COURT:  So this is the only company that makes

5  this product?

6          MR. SHAFFER:  That I know of, yes, in this model

7  number, Your Honor.

8          THE COURT:  There's another assertion in the

9  Defendant's pretrial memorandum that the Plaintiff's liability

10 expert, this is on Page 4, Mr. Beatty admitted that the

11 accident potentially could have happened even if all of his

12 proposed alternative design changes were implemented.  Did your

13 expert say that?

14         MR. SHAFFER:  No, it was based upon a hypothetical

15 question, based upon Mr. Altschuler's -- he said, assume all of

16 these facts, all those hypothetical that he suggested.  And so

17 that's not the way the testimony went in.  It was based upon a

18 hypothetical.

19         MR. ALTSCHULER:  Your Honor, if I may?

20         THE COURT:  Yeah, go ahead.

21         MR. ALTSCHULER:  He absolutely admitted to that,

22 because he's done no testing at all.  And the hypothetical was

23 based upon the facts of this case, meaning no maintenance

24 repair, no inspection, cane used for 11 years.  Using his

25 design, he can't state that the accident would not have

1    happened.  That's the testimony.  So it is a hypothetical, but

2    it's a hypothetical based upon the facts of this case.

3           THE COURT:  And then the Defendant is also asserting,

4    on Page 6, that of the 118,000 quad canes manufactured between

5    2011 -- 2011 and 2016, the Plaintiff's claim of snap button

6    fracture is the only one known to the Defendant.  Is that an

7    accurate statement?

8           MR. SHAFFER:  I believe there are three other cases

9    where a snap button was mentioned as a fracture or there was a

10   problem with a snap button.  They tried to explain that, but

11   that's for the Jury to determine whether or not those were

12   significantly similar.  In other words, they're -- in the

13   report, it says snap button -- cane broke because of snap

14   button.  There are three instances.  And we asked the Defendant

15   to try to explain a way, no, these are not really snap buttons.

16   But it says specifically in their reports, snap buttons.

17          MR. ALTSCHULER:  It does not say that, Your Honor.

18   And most importantly, Mr. Beatty agreed with me that out of

19   three complaints that were produced -- and the only reason we

20   said anything or provided anything with regard to prior

21   complaints is because there was some discussion about snap

22   buttons, but none of them say anything about a snap button

23   failure or fracture.  I got Mr. Beatty to agree with me.

24          He references two of the three complaints in his

25   report for the proposition that Invacare knew or should have

1    known that the cane was defectively designed.  I went through

2    each of those complaints with him, painstakingly, and got him

3    to agree that neither of those complaints stand for the

4    proposition that the snap button fractured or failed in the

5    manner that is being alleged by the Plaintiff.

6            And I know that Your Honor has ruled on that motion

7    in limine, but it's appropriate for me to ask right now, if

8    you're going to give Plaintiff any latitude in this area, I

9    would respectfully request that he not be able to bring it up

10   in his opening at all, but rather, he's got to lay a

11   foundation, and perhaps even an offer of proof.

12           THE COURT:  Yeah.  Anything that I've ruled on,

13   you're not allowed to bring up during your openings.

14           MR. SHAFFER:  Okay.

15           THE COURT:  Now, I'm not nec -- when I issue rulings

16   without prejudice, that means you can certainly try to bring it

17   up during the course of the trial if you lay a sufficient

18   foundation and you bring it to my attention that you want to

19   get into this area.  I'll reconsider and reevaluate and see how

20   the evidence develops.  No, but I, I want to be very clear,

21   anything that has been ruled out at this point, you can't bring

22   up during openings.

23           MR. SHAFFER:  Is the same true for, for example, if

24   you denied a motion without prejudice, one of my motions in

25   limine without prejudice, then that topic, for example, prior

```
 1   similar complaints can't be raised during opening?

 2            THE COURT:  Well, let's take a look at the specifics

 3   of which ruling you're asking about.

 4            MR. SHAFFER:  Okay.

 5            THE COURT:  And then we'll -- and then I'll respond

 6   to you.

 7            MR. SHAFFER:  Okay.  Thank you.

 8            THE COURT:  But let's finish this process.

 9            MR. SHAFFER:  Sure.

10            THE COURT:  I see that the Defendant has, looks like

11   five witnesses.  Mr. Belita, the same gentleman that the

12   Plaintiff intends to call, how long do you think you will be

13   with Mr. Belita?

14            MR. ALTSCHULER:  I would say about an hour, Your

15   Honor, somewhere in that range.  Depends upon what Mr. Shaffer

16   does with him on cross.

17            THE COURT:  And you have Charles Konkol.

18            MR. ALTSCHULER:  That's Mr. Konkol sitting right next

19   to me, Your Honor.  He's from Invacare and he's going to be

20   about a half an hour at best.

21            THE COURT:  And Rory Pfeifer, is that a family member

22   of the Plaintiff?

23            MR. ALTSCHULER:  Yes, Your Honor.  We've stipulated,

24   Mr. Shaffer and I have stipulated that I can read in portions

25   of his deposition during my case in chief.  And we just have to
```

1   come to an agreement if there's any objections.

2           MR. SHAFFER:  No, we (inaudible).

3           THE COURT:  And then you have liability expert, Mr.

4   Toler [phonetic].

5           MR. ALTSCHULER:  Yes.

6           THE COURT:  Any estimate as to how long he'd be on

7   direct?

8           MR. ALTSCHULER:  I would say he'd be a couple of

9   hours, Your Honor.

10          THE COURT:  You're both experienced trial lawyers, so

11  you know when you talk about a couple of hours with a liability

12  expert, you run the risk of putting the jury to sleep.  But

13  that's your --

14          MR. ALTSCHULER:  -- I just don't --

15          THE COURT:  -- issue.

16          MR. ALTSCHULER:  I just don't want to tell you it's

17  going to be an hour and then go over and --

18          THE COURT:  -- No, I'm not holding anybody to these

19  estimates.  I'm just trying to plan our week.

20          MR. ALTSCHULER:  Sure.

21          THE COURT:  That's all.  And then Mr. Stephanachi

22  [phonetic], your damage expert.  Any estimate?

23          MR. ALTSCHULER:  He's already testified.  I think the

24  video might run about an hour and 45 minutes, both direct and

25  cross.  Your Honor, if I may, because I don't know that it's on

```
 1    my pretrial, but I -- it's in -- it's in the pretrial, I did
 2    designations from Plaintiff's discovery deposition that I will
 3    also be reading into evidence in my case in chief.
 4              THE COURT:  All right.  I see that that the Defense
 5    is moving to dismiss the lawsuit with respect to the claims of
 6    expressed warranty and implied warnings of merchant building
 7    and fitness for a particular purpose based on the statute of
 8    limitations, and I've reviewed that.  What's the Plaintiff's
 9    position on the statute of limitations on these warranty
10    claims?
11              MR. SHAFFER:  They, they don't -- the statute of
12    limitations doesn't hold for any damages, and the damages don't
13    occur until January.
14              THE COURT:  All right.  What I'm going to ask you to
15    do -- have we received any briefing on this --
16              MR. ALTSCHULER:  -- Well --
17              THE COURT:  -- Alesandra [phonetic] --
18              MR. ALTSCHULER:  -- it's in my pretrial, Your Honor.
19              THE COURT:  -- from the Plaintiff?
20              THE CLERK:  Only the Defense.
21              THE COURT:  Only the Defense.  All right.  I'm going
22    to direct that you file a memorandum on this by Friday, 5:00
23    p.m., setting forth legal authority that you believe supports
24    your position that these two claims should not be dismissed
25    because of the statute of limitations.  We'll take a look at
```

```
1    your legal authority.  All right.  That's all the questions I
2    have for the Defense.  Does the Plaintiff have any questions
3    for the Defense based on the Defendant's pretrial memorandum?
4              MR. SHAFFER:  No, Your Honor.
5              MR. ALTSCHULER:  Your Honor, may I raise an issue
6    based upon my pretrial?
7              THE COURT:  Mm-hmm.
8              MR. ALTSCHULER:  So Your Honor's ruled, the
9    Plaintiff's conceded, Mr. Beatty conceded during his cross-
10   examination, or deposition, excuse me, that he is not claiming
11   a manufacturing defect.  The law in --
12             THE COURT:  -- You agree with that?
13             MR. SHAFFER:  Yes, Your Honor.
14             THE COURT:  All right.
15             MR. ALTSCHULER:  The law in Pennsylvania is crystal
16   clear.  The malfunction theory applies to a manufacturing
17   defect only.  It does not apply to a design defect theory,
18   which is what Mr. Beatty is claiming in this case.  Plaintiff,
19   when, and I'm not sure, well, I assume you're going to be
20   talking about, Your Honor's going to be talking about the joint
21   statement momentarily, but in the Plaintiff's joint statement,
22   he wants to be able to refer to the cane as having
23   malfunctioned.  That's a term of art.  That's a legal term.
24   And that's why we raised it in our pretrial statement, because
25   there is no claim for a manufacturing defect, there can be no
```

1    malfunction theory in this case.

2              THE COURT:  And what's your position on that?

3              MR. SHAFFER:  Sure, Your Honor.  There is no need --

4    malfunction is a way to prove a defect.  And the Pennsylvania

5    Supreme Court has been clear that a Plaintiff may prove

6    malfunction simply by showing that there's a defect in a

7    product, the occurrence of a malfunction is eliminating that

8    normal use or reasonable secondary causes for the malfunction.

9    There's no reason -- there's no need to prove manufacturing

10   defect.  This is just a way to prove a malfunction about a

11   product defect case.

12             Yes, you can prove a manufacturing defect.  That's

13   one of the ways.  But that's not the only way to prove a

14   malfunction.  We have an expert that testify that -- the expert

15   Mr. Beatty's report says it malfunctioned because it's broken,

16   and there are no reasonable secondary causes in his expert

17   report.  We have something that's broken.  He explained why it

18   broke, because of the improper design.  And therefore, it's a

19   broken cane.  The Plaintiff has clearly and properly proven a

20   malfunction case.  There's a broken cane.

21             THE COURT:  All right.  I generally like to, when I

22   make legal rulings, I generally like to check the law before I

23   issue the ruling rather than go on my recollections.  So I'm

24   going to direct that both sides submit, and by the way, you can

25   do this in the form of a letter brief without the formality of

 1  a memorandum or a brief, you can just do a letter, but submit

 2  letter briefs on this by, let's do -- let's do Friday at 12:00,

 3  noon, of this week.

 4           In fact, the memo I talked to you earlier about, that

 5  I said would be due at 5:00, make it due at 12:00, noon.

 6  That'll give my staff a chance to work on it during work hours.

 7  So let's do letter briefs on this subject, as well.

 8           MR. SHAFFER:  Thank you, Your Honor.

 9           THE COURT:  All right.  I note that, looks like

10  Invacare sent a proposed stipulation of uncontested facts to

11  the Plaintiff on September 27.  Where does that stand?

12           MR. SHAFFER:  I think we can agree with those.  I, I

13  just got them.  I just finished a trial this week.  But yes, I

14  can agree to those.  We'll -- I'll work those out with the

15  counsel.  I just literally finished a trial (inaudible).  So I

16  will work this out with counsel.

17           THE COURT:  All right.  Yeah.  I saw the news report

18  on it today.

19           MR. SHAFFER:  Thank you.

20           THE COURT:  Yeah.  Congratulations.

21           MR. SHAFFER:  Thank you.  It's been -- and I -- Your

22  Honor, again, I just want to say on the record, I, I

23  miscalendared the motions in limine date.  I, I sincerely

24  apologize.  It was my office.

25           THE COURT:  It's all right.

21

```
 1              MR. SHAFFER:  And I -- I'm very, very sorry.  We --
 2    we're really usually very good at that.  It kind of slipped
 3    through the cracks.
 4              THE COURT:  No, you have a busy practice.  I
 5    understand.
 6              MR. SHAFFER:  I, I -- it's not -- it's no excuse,
 7    Your Honor.  I apologize.
 8              THE COURT:  Yeah.  All right.  Well then, I would
 9    like to then on -- by Friday at 12:00, noon, be notified as to
10    the status and the outcome of those discussions.   And if you
11    are able to confirm you agree to all the proposed stipulation
12    of facts or if there are any that you don't agree with.
13              MR. ALTSCHULER:  Okay.
14              THE COURT:  All right?
15              MR. SHAFFER:  Yes, Your Honor.
16              THE COURT:  All right.  The joint summary that we
17    want to read to the panel before voir dire, it doesn't have to
18    be long, but we have to tell the prospective jurors a little
19    bit about the case so they have a context in which to
20    understand the questions that are going to be asked of them.
21    Where does that stand?
22              MR. SHAFFER:  I don't think we were able to agree to
23    it, Judge.
24              MR. ALTSCHULER:  Yeah.  That actually was the issue
25    that I just brought up, Your Honor.  Plaintiff's joint
```

1    statement wants to reference malfunction.  He would like to

2    also reference breach of warranty, which for the reasons we

3    just discussed --

4              THE COURT:  -- Yeah, generally, we don't get into

5    specifics of legal issues on the joint summary read to a

6    perspective panel.  We get into the fact that it's -- this was

7    an accident, here's how the accident allegedly happened

8    according to Plaintiff, here's how the accident allegedly

9    happened -- allegedly happened according to the Defendant.

10   It's a lawsuit involving alleged products liability, involving

11   a quad cane.  Something simple.

12             MR. SHAFFER:  Okay.

13             THE COURT:  But we're not -- we generally don't get

14   into legal theories and legal details at that early stage of

15   the case.  So I'm going to direct that by -- also by 12:00,

16   noon, Friday, that you reach agreement on a brief, simple joint

17   summary to be read to the jury panel before voir dire

18   commences.  Same instruction I'm going to give to you to reach

19   agreement on a joint summary to be read to the seated jury who

20   will hear the case.

21             It can be -- if you feel it's the same statement read

22   over again, we can do that.  But we want to give them just a

23   brief overview of what the case is about.  So again, by 12:00,

24   noon, Friday to reach agreement on that.

25             MR. SHAFFER:  Yes, Your Honor.

```
 1              THE COURT:  Next, let's turn to voir dire.  As I
 2   recall, both of you have submitted proposed voir dire
 3   questions.  Does Plaintiff have any objections to any of the
 4   questions that the Defendant wants to ask?
 5              MR. SHAFFER:  Sorry, I've just got to go over the…
 6   No, Your Honor.
 7              THE COURT:  Does Defense have any objections to any
 8   of the questions the Plaintiff wants to ask?
 9              MR. ALTSCHULER:  I have an issue with Number 15, Your
10   Honor, and 16, and 17.
11              THE COURT:  15, 16, and 17.
12              MR. ALTSCHULER:  And 19.
13              THE COURT:  And 19.  All right.  We'll take a look at
14   those.  All right.  All the other questions, you don't have any
15   objection to?
16              MR. ALTSCHULER:  Correct.
17              THE COURT:  All right.  As an infor -- as an
18   information item with all of my jury trials, I do the voir
19   dire.  So it'll give you an opportunity to take notes as we
20   hear the responses from the jurors.  And then once I finish, if
21   there's any follow up, not a lot, but if there's any important
22   follow up you think needs to be addressed, we'll, we'll take
23   that up.
24              MR. ALTSCHULER:  But you would still be asking any
25   follow up, is that --
```

24

```
 1              THE COURT:  -- It depends on what it is.
 2              MR. ALTSCHULER:  Okay.
 3              THE COURT:  Yeah.  Next, would you both, both sides,
 4   please send your voir dire questions to us in a Word document
 5   format via e-mail, and then we're -- then we're going to
 6   combine them into one set for me to ask.
 7              MR. SHAFFER:  I think we did already, Your Honor.
 8              MR. ALTSCHULER:  Already did, Your Honor.
 9              THE COURT:  Did you do it?
10              MR. SHAFFER:  Yeah.
11              MR. ALTSCHULER:  Yeah, I believe we did it.  We can
12   do it again.
13              THE COURT:  Why don't you do it again, just for the
14   sake we don't have to look for it if… I don't doubt you when
15   you say you already sent it, but if you would send it again,
16   that would be great.
17              MR. ALTSCHULER:  Sure.
18              THE COURT:  We will hold a charge conference before
19   closing arguments, so you will have an indication as to the law
20   that I will give to the jury.  This is a reminder that, under
21   my rules, you need to bring three sets of joint exhibit
22   binders, three ring binders, and they need to be available the
23   first day of trial.  First day of trial, of course, will be
24   Tuesday.  Monday is a federal holiday.
25              MR. ALTSCHULER:  Your Honor, with respect to that, I
```

1    was speaking with Mr. Shaffer before we started today.  There's

2    pretty extensive exhibits.  Our exhibits take up two full

3    notebooks and-a-half.  I'm sure Mr. Shaffer's will be the same.

4    When you say joint, do we just have like a joint exhibit list

5    and then --

6                    THE COURT:  -- Mm-hmm.

7                    MR. ALTSCHULER:  -- we just deliver those binders and

8    have --

9                    THE COURT:  -- You merge the two.  Plaintiff exhibits

10   and Defendant exhibits together, merge them into one list, one

11   set of numbering, and put them all in three ring binders.  The

12   reason we do that is, we've often found that the Plaintiff

13   sometimes will have the same exhibit as the Defendant;

14   Defendant will sometimes have the same exhibit as the

15   Plaintiff.  Each one will use their own.  And sometimes, it

16   gets a little bit confusing with respect to exhibit numbers.

17   So we'd like to have one list of exhibits, one set of exhibits.

18                   MR. SHAFFER:  And so, at trial, should we call them

19   Trial Exhibit 1 or just Plaintiff's Exhibit 1, or how would you

20   like us to reference that?

21                   THE COURT:  You can call it -- if you -- how have we

22   done it in the past?  I don't remember.

23                   COURTROOM DEPUTY:  It's usually J1.

24                   THE COURT:  J1.

25                   MR. SHAFFER:  J1.

26

1          THE COURT:  And of course, it doesn't mean anything

2    to the Jury, whether it's Plaintiff 1 or J1, or what.

3          MR. SHAFFER:  Of course, yeah.

4          THE COURT:  Yeah.

5          MR. SHAFFER:  I just didn't know what you wanted us

6    to do.

7          THE COURT:  Yeah.  So it'll be J1, J2, so on and so

8    forth.

9          MR. SHAFFER:  Okay.

10          THE COURT:  We will start in Philadelphia on Tuesday,

11    and we will make it a full day.  Jury selection, I generally

12    find, takes an hour to two hours.  Are we number two on the

13    jury selection list, Mr. Wood?

14          COURTROOM DEPUTY:  Yes, sir.

15          THE COURT:  That means that, depending on how many

16    jurors report for duty on Tuesday, we may get a panel

17    immediately to choose from, or if there's a low number of

18    jurors that report for duty on Tuesday, we may have to wait the

19    case until the case ahead of us completes jury selection.  So

20    we won't know that until Tuesday morning.

21          But I find in civil cases, jury selection generally

22    takes an hour to two hours, because I move it along pretty

23    quickly.  Do expect to be prepared to proceed with the trial

24    immediately thereafter with opening statements and with

25    presentation of evidence.  We're going to try to make it a

1    productive day.  Every day thereafter will be held here in

2    Allentown.  So just the first day in Philadelphia.

3            MR. ALTSCHULER:  Your Honor, if I may, the exhibits

4    that we're going to be providing to the Court, they should be

5    delivered in Philadelphia?

6            THE COURT:  Mm-hmm.

7            MR. ALTSCHULER:  Okay.

8            THE COURT:  Yeah.  We generally start every day at

9    9:00 and finish every day at 5:00.  We'll take a break in the

10   mid-morning for restroom, and a break in the mid-afternoon for

11   the restroom.  Typically, an hour for lunch.  In Philadelphia,

12   we're assigned to Courtroom 3B, that's three as in boy, 3B,

13   third floor.  So we will see you there Tuesday morning in

14   Courtroom 3B.  How much time does the Plaintiff estimate you'll

15   need for opening statement?

16           MR. SHAFFER:  20 minutes.

17           THE COURT:  And Defense?

18           MR. ALTSCHULER:  I would say somewhere in that range,

19   Your Honor.

20           THE COURT:  Okay.  As far as number of jurors, I'm

21   thinking eight.  And we'll go with -- we have to have a minimum

22   of six in a civil case, but I think we'll go with eight.  As

23   you know, each party has three preemptory challenges.  I think

24   I already covered this, but to the extent I denied any motions

25   in limine without prejudice, such evidence may not be mentioned

```
 1   in opening statements or by witnesses before a proper

 2   foundation is laid and it's brought to my attention for a

 3   ruling.  All right.  That's all I have.  Let me see.

 4             THE CLERK:  (Inaudible)?

 5             THE COURT:  Hmm?

 6             THE CLERK:  The technology (inaudible).

 7             THE COURT:  Oh, that's right.  Yeah.  You'll probably

 8   see that my Courtroom is a beautiful courtroom, but it has no

 9   technology in it.  So to the extent that you want technology,

10   you have to bring it, bring your own stuff.  And I expect that

11   if somebody brings technology, they'll have the professional

12   courtesy to let the other side use it.

13             MR. SHAFFER:  Yeah, we just agreed to that, Judge,

14   this afternoon.

15             THE COURT:  Okay.  All right.  That's all I have.

16   Let's turn to each side.  Plaintiff, anything else you want to

17   bring up or have me address?

18             MR. SHAFFER:  On the pretrial, Your Honor?

19             THE COURT:  Yeah.

20             MR. SHAFFER:  No, Your Honor.

21             THE COURT:  All right.  Defense?

22             MR. ALTSCHULER:  Yes, Your Honor.  Just with regard

23   to the motions in limine.  This is where I want to make sure

24   that we're clear on what can be said during opening and what

25   can't be.
```

```
 1              THE COURT:  All right.  Well, let's turn to the
 2   ruling that you're looking at.  Okay.  Is this the order of
 3   September 29th?
 4              MR. ALTSCHULER:  Yes, Your Honor.
 5              THE COURT:  All right.  Go ahead.
 6              MR. ALTSCHULER:  So this concerns the omnibus motion
 7   in limine, it's Page 2 of Your Honor's ruling.
 8              THE COURT:  Okay.
 9              MR. ALTSCHULER:  With regard to subparagraph -- I
10   apologize, Your Honor.  You've already discussed the
11   manufacturing.  This will be F, since Mr. Beatty is precluded.
12   So this has to do with the malfunction theory that I brought up
13   earlier.  So I just want to point that out.
14              MR. SHAFFER:  I -- I'm sorry.  I didn't hear what you
15   were saying.
16              MR. ALTSCHULER:  With regard to I, Your Honor, Dr.
17   Beatty may testify generally as to whether a screw style cam
18   lock or circum -- or circumferential cam lock distributes the
19   load between the lock and snap buttons.
20              So we, we raise this issue, Your Honor, because Mr.
21   Beatty did no testing to establish that, in this hypothetical
22   cane, or any other cane for that matter, like an exemplar cane
23   from another manufacturer, that this screw style lock that he's
24   talking about is designed in order to take the load off those
25   snap buttons.  He's done no testing whatsoever.  So it's
```

1  completely without any reliability for him to come in and

2  testify that it would -- it would distribute the load.

3          So I just raise that, Your Honor, because any opinion

4  that he would offer about a hypothetical that he didn't test

5  would just be creating confusion for the jury as to whether

6  that type of lock could work when he doesn't know himself.

7          THE COURT:  Well, what we're going to do is, you can

8  certainly object at the time the question is asked.  Let me see

9  how the record is developed to that point --

10          MR. ALTSCHULER:  Okay.

11          THE COURT:  -- in time.  But if the facts are, as you

12  suggest, then you're certainly going to have very strong cross-

13  examination material.

14          MR. ALTSCHULER:  Yeah, I, I agree.  The same is true

15  for his lock collar loosening.  But I, I won't argue on that

16  point at this moment.  With regard to K, Your Honor, the ruling

17  on K and the footnote, Your Honor indicates that he is

18  precluded from offering an opinion that Mr. Pfeifer or any user

19  could safely use his hypothetical steel cane, which weighs one

20  and-a-half pounds more than the subject cane.  But in the

21  footnote, Your Honor, you indicate that Mr. Beatty may testify

22  to the difference in weight.

23          And respectfully, if he can't say that a cane that

24  weighs more is a safe alternative design, which the law

25  requires, then I would suggest to you that him offering any

```
 1   opinion with regard to a steel cane and its weight becomes
 2   irrelevant.  And therefore, it should just be an issue -- it
 3   should not be an issue for the jury to even hear.
 4              THE COURT:  All right.  We'll take a look at that.
 5              MR. ALTSCHULER:  Okay.
 6              THE COURT:  If you want to submit any supplemental
 7   argument on that point in way of reconsideration, do you want
 8   to do so?
 9              MR. ALTSCHULER:  Yes, if that's okay, Your Honor.
10              THE COURT:  Yeah.  And then the Plaintiff can
11   certainly respond.
12              MR. ALTSCHULER:  Okay.
13              MR. SHAFFER:  I mean, I think we've briefed this
14   already, Your Honor.
15              THE COURT:  I think you have, but you know what, if
16   there's anything else you have to add to it or if you want to
17   present it in a more persuasive manner.
18              MR. ALTSCHULER:  A better way than we did.  Okay.
19              THE COURT:  Yeah.
20              MR. ALTSCHULER:  All right.  I -- if it's okay, I may
21   do that with respect to just a couple of others and I won't --
22   I won't inundate the Court.
23              THE COURT:  All right.  And then you can certainly
24   respond.  How soon can you get that in?
25              MR. ALTSCHULER:  We can get that to you by Friday,
```

32

1  Your Honor.

2          THE COURT:  Can you get it sooner, because I'd like

3  to give the Plaintiff an opportunity to respond --

4          MR. ALTSCHULER:  Sure.

5          THE COURT:  -- if you want to.  How about tomorrow at

6  noon?

7          MR. ALTSCHULER:  I'll, I'll get it to Plaintiff

8  tomorrow by noon.

9          THE COURT:  All right.  And then you can respond by

10 Friday at noon, if you want to respond, or rest on what you've

11 already submitted.

12         MR. SHAFFER:  Okay.

13         THE COURT:  All right.  Anything else?

14         MR. ALTSCHULER:  Yes, Your Honor.  With regard to the

15 order dated September 30th, Item Number 3, Your Honor, Rule

16 Number 3.  With regard to issues related to certain testimony

17 of the Plaintiff concerning insurance, and the Plaintiff

18 testifying, it's in his -- it's in his trial deposition, Your

19 Honor, which is, as the Plaintiff's indicated, I'm not

20 (inaudible), so it's already ripe for the Court, in my opinion.

21 He testified that he essentially was thrown out of rehab

22 because of insurance.

23         THE COURT:  All right.  So this is already in the

24 Plaintiff's trial deposition.

25         MR. ALTSCHULER:  Yes.

33

```
 1              THE COURT:  All right.  I'm going to ask you to do
 2   the same thing.
 3              MR. ALTSCHULER:  Okay.
 4              THE COURT:  Tomorrow by noon, put it in writing.  By
 5   the way, you can do it informally with a letter.  You don't
 6   have to do a memorandum or brief.  And then same thing,
 7   Plaintiff wants to respond, by Friday at noon.
 8              MR. SHAFFER:  I think, Your Honor, respectfully,
 9   we've kind of litigated this already.  But we've done motions
10   in limine, and that's the reason we've done motion in limine,
11   so we can --
12              THE COURT:  -- I understand.  But if something is
13   important enough for one of the attorneys to raise it at the
14   pretrial conference, I interpret it as a request for
15   reconsideration and we'll take a look at it.  That doesn't mean
16   I'm going to change my position or change my ruling.
17              MR. SHAFFER:  I understand.
18              THE COURT:  But I, I always am willing to consider
19   what's being requested.
20              MR. SHAFFER:  I understand, Your Honor.
21              MR. ALTSCHULER:  And then I've already raised the
22   issue of prior complaints.  So the only point I would make with
23   respect to that issue is that the Plaintiff not be permitted --
24   Your Honor denied it without prejudice, but what I would sug --
25   would request, respectfully, is that the Plaintiff not be
```

34

```
 1   permitted to raise the issue of any alleged prior complaints in

 2   his opening.  And then, before he asks any witnesses any

 3   questions about alleged prior complaints, that there be an

 4   offer of proof, because we believe, Your Honor, the law is

 5   crystal clear on our side, there has to be substantial

 6   similarity.  There isn't.

 7             THE COURT:  Yeah, I agree with that.  I'm directing

 8   you not to bring that up in your opening statement.

 9             MR. SHAFFER:  I, I won't.  I've already said that I

10   won't.

11             THE COURT:  All right.  Well, we're just reaffirming.

12             MR. SHAFFER:  Of course.

13             THE COURT:  And if you do decide, we'll, we'll hear

14   what the evidence is before deciding admissibility.  So you can

15   raise objections as the -- as these issues surface.

16             MR. ALTSCHULER:  Thank you, Your Honor.  That's all I

17   have.

18             THE COURT:  All right.  Anything else before we

19   adjourn this part of today's session?

20             MR. SHAFFER:  No, Your Honor.

21             THE COURT:  All right.  All right, then being nothing

22   else, what we're going to do is we're going to adjourn the

23   pretrial conference and then hold a settlement conference.  Mr.

24   Wood, would you adjourn Court?

25             COURTROOM DEPUTY:  Yes, sir. Court is adjourned.
```

```
 1              THE COURT:  All right.  What I'd like to do if it's o

 2   --

 3              [OFF THE RECORD 02:45:23]

 4              [ON THE RECORD 04:33:50]

 5              THE COURT:  All right.  Mr. Wood, when you're ready,

 6   would you reopen Court, please.

 7              COURTROOM DEPUTY:  Court is again in session.

 8              THE COURT:  All right.  We had an off the record

 9   settlement conference between the parties and an agreement

10   involving a binding arbitration with a high/low award limit, I

11   believe, has been reached.  What we're going to do is, in just

12   a moment, I'm going to ask the lawyers to state the terms of

13   the agreement and -- but first, we want to have the clients

14   sworn in, because we're going to ask them, after the agreement

15   is stated, whether they're in agreement, whether they've

16   authorized it.  So Mr. Wood, would you administer the oath?

17   Ask them to identify themselves and administer the oath to each

18   one of the clients that are here today.

19              COURTROOM DEPUTY:  Yes, sir.

20              MS. LISA M. SANITA:  I'm sorry, I didn't hear what he

21   said.

22              COURTROOM DEPUTY:  No, that's fine.  We'll go through

23   it right now.  Could you raise your right hand?

24              THE COURT:  First, state your name.

25              COURTROOM DEPUTY:  So, we're -- we'll do it -- you
```

36

```
 1   first, and then you, and then you.  Raise your right hand.  Do
 2   you swear or affirm that the testimony you're about to give to
 3   this Court will be the truth, the whole truth, and nothing but
 4   the truth, so help you God or do you so affirm?
 5              MS. SANITA:  I do.
 6                 LISA SANITA, PLAINTIFF, SWORN
 7              COURTROOM DEPUTY:  Thank you.  And can you please
 8   state your full name, spelling your last name?
 9              MS. SANITA:  Lisa M. Sanita, S-A-N-I-T-A.
10              COURTROOM DEPUTY:  And is it Lisa, L-I-S-A?
11              MS. SANITA:  L-I-S-A.
12              COURTROOM DEPUTY:  Okay.
13              MS. SANITA:  M as in Mary.
14              COURTROOM DEPUTY:  Sir, please your right hand.  Do
15   you swear or affirm that the testimony you're about to give to
16   this Court will be the truth, the whole truth, and nothing but
17   the truth, so help you God or do you so affirm?
18              MR. SANITA:  I do.
19                RICHARD SANITA, PLAINTIFF, SWORN
20              COURTROOM DEPUTY:  And the same thing, please state
21   your full name, spelling your last name.
22              MR. SANITA:  Richard J. Sanita, spelled the exact
23   same way.
24              COURTROOM DEPUTY:  Please raise your right hand.  Do
25   you swear or affirm that the testimony you're about to give to
```

 1  this Court will be the truth, the whole truth, and nothing but

 2  the truth, so help you God, or do you so affirm?

 3          MR. CHARLES KONKOL:  I do.

 4              CHARLES KONKOL, PLAINTIFF, SWORN

 5          COURTROOM DEPUTY:  Thank you.  And the same thing,

 6  first and last name?

 7          MR. KONKOL:  Charles Konkol, K-O-N-K-O-L.

 8          COURTROOM DEPUTY: K-O-N-K?

 9          MR. KONKOL:  O-L.

10          COURTROOM DEPUTY:  O-L.  Okay.  Thank you.  You may

11  be seated.

12          THE COURT:  All right.  Let me turn to Mr. Shaffer.

13  Mr. Shaffer, would you articulate the terms of the agreement

14  that the parties have reached?  then we'll turn to Mr.

15  Altschuler to see if he concurs with what you've stated.

16          MR. SHAFFER:  First off, on behalf of my client, Your

17  Honor, thank you for your hard work this afternoon and thank

18  you for the Defendants on their hard work and coming to some

19  type of agreement to arbitrate this matter.  The terms are as

20  follows: the binding arbitration we've agreed to with the

21  following limits, a high of 325,000, a low of 60,000.  We've

22  agreed to submit it to retired Judge Stengel.  I'm assuming if

23  there is a conflict with Judge Stengel, then we will then go to

24  another Federal Judge, but hopefully there'll be no conflict

25  with him.

1             It is my hope that we'll be able to finish this in

2    one day.  The parties have not been able to come to an

3    agreement whether or not we're going to do this on reports.

4    We'll prob -- each side is going to decide if they're going to

5    do their own reports or bring in live experts.  That is for the

6    parties.  We're going to schedule this as soon as possible.

7             MR. ALTSCHULER:  Your Honor, a couple of issues.

8    First of all, as far as the high-low is concerned, this may go

9    without saying, the arbitrator is not to be made aware of the

10   parameters, number one.  Number two, I don't know that it's

11   going to take one day.  Of course, my goal is to get it done as

12   quickly as I can, but I'm not going to give any assurances that

13   it can be done in one day.

14            And then, lastly, there was not an agreement with

15   regard to doing this on reports.  I plan, or at least want to

16   have the option of bringing in my liability expert.  My medical

17   expert has already been videotaped, and I wanted to have the

18   ability to take the Plaintiff's doctor's deposition, as well,

19   as opposed to his report being entered into evidence at the

20   arbitration.

21            MR. SHAFFER:  Well, that's my option if I want to

22   proceed with that stuff.  It's not -- it's not (inaudible).

23            MR. ALTSCHULER:  Yeah, I, I can't agree to that.

24   We're talking (inaudible) in his report.  So I want to have the

25   opportunity to question him.

39

```
 1              MR. SHAFFER:  All right.  We'll do the (inaudible).

 2              MR. ALTSCHULER:  All right.  And I'm assuming you

 3   paid for it.

 4              THE COURT:  All right.  It sounds like the -- if I

 5   understood everybody here, let me see if I can summarize it in

 6   its totality, a binding high/low arbitration to be conducted in

 7   front of retired Federal Judge Lawrence Stengel.  Judge Stengel

 8   is not to be told the parameters of the high/low.

 9              MR. SHAFFER:  Of course.

10              THE COURT:  I know there's a request that'll be done

11   in one day, but there's no agreement that it is limited to one

12   day.

13              MR. SHAFFER:  Correct.

14              THE COURT:  The deposition of Plaintiff's doctor,

15   which is currently scheduled for this Friday, will go forward

16   as currently scheduled.

17              MR. SHAFFER:  Correct.

18              THE COURT:  Was there anything else?

19              MR. ALTSCHULER:  Yeah.  I wanted to have the option

20   to bring in experts, an expert, a liability expert in my --

21              THE COURT:  -- Yeah, I didn't hear any restriction on

22   that.

23              MR. ALTSCHULER:  Thank you.

24              MS. SANITA:  It's (inaudible).

25              MR. ALTSCHULER:  Okay.
```

```
 1              THE COURT:  All right.  Anything else?

 2              MR. SHAFFER:  No, Your Honor.

 3              THE COURT:  All right.  Do we have an agreement then

 4   between the lawyers?

 5              MR. ALTSCHULER:  Yes, Your Honor.

 6              THE COURT:  All right.  Now, let me address to the

 7   clients that are here today.  Ms. Sanita, did you hear the

 8   terms of the agreement to go forward with the binding

 9   arbitration?

10              MS. SANITA:  Yes.

11              THE COURT:  And are you in agreement with those

12   terms?

13              MS. SANITA:  Yes, Your Honor.

14              THE COURT:  All right.

15              MR. SHAFFER:  And also, Your Honor, I think I should

16   put on the record that Mrs. Sanita has power of attorney for

17   her father.

18              THE COURT:  All right.  And Mr. Sanita, you also

19   heard the terms of this proposed binding arbitration agreement?

20              MR. SANITA:  Yes, I did.

21              THE COURT:  And you're in agreement with those terms?

22              MR. SANITA:  Yes, I am.

23              THE COURT:  All right.  And Mr. Konkol, you're here

24   on behalf of Invacare Corporation.  By the way, let's put on

25   the record what your title is with the company.
```

1          MR. KONKOL:  Claims Manager.

2          THE COURT:  All right.  And you heard the terms of

3    the binding arbitration agreement stated today?

4          MR. KONKOL:  Yes.

5          THE COURT:  And you're in -- you're in agreement with

6    those terms?

7          MR. KONKOL:  Yes.

8          THE COURT:  All right.  Very good.  Everyone may be

9    seated.  All right.  Is there anything else we can accomplish

10   before we adjourn Court today?

11         MR. SHAFFER:  No, that's fine.  Thank you, Your

12   Honor, for your time.

13         THE COURT:  All right.

14         MR. ALTSCHULER:  No, Your Honor.  Thank you very much

15   for all your help.

16         THE COURT:  All right.  What we're going to do is,

17   we're going to put the case on hold.  The trial next week,

18   obviously, is not going to occur.  The filings that you were

19   supposed to present to me tomorrow and Friday, obviously, do

20   not need to be filed as a result.  We will keep the docket on

21   the case open until the arbitration is concluded, but I will

22   direct that within the -- within 10 days of the arbitration

23   being concluded, or I should say when the -- after the -- 10

24   days after the award is entered, that counsel send a joint

25   report indicating that the case is concluded so we'll know to

42

1    terminate the docket.  All right.  There being nothing else,

2    Mr. Wood, would you adjourn Court, please?

3            COURTROOM DEPUTY:  Yes, sir.  All rise.  The Court is

4    adjourned.

5            THE COURT:  Have a good day, everyone.

6            [OFF THE RECORD]

7                          *  *  *  *  *

## C E R T I F I C A T I O N

I, Kelvin Wobine, court approved transcribers, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter, and to the best of our ability.

_____

DATE:  June 12, 2023